# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# SOUTHERN DIVISION

| | |
|---|---|
| **PATRICIA TRACY,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| v. ) | Case No. 2:06-CV-00536-VEH |
| ) | |
| **ELI LILLY AND COMPANY, et al.,** ) | |
| ) | |
| **Defendants.** ) | |

## MEMORANDUM OPINION

Pending before the court is Plaintiff's Emergency Motion to Remand (doc. 13). This motion has been briefed extensively and is ripe for review. A hearing has not been requested on the instant motion, and the court is satisfied that a decision can be reached based on the papers submitted by the parties. For the reasons stated herein, the Motion to Remand is due to be **GRANTED**.

## Procedural History

Plaintiff Patricia Tracy commenced this action in the Circuit Court of Jefferson County, Alabama, on February 14, 2006, by filing a Complaint against Defendants Eli Lilly and Company, Richard Leventry, and Mary V. Green. Eli Lilly is an Indiana corporation. Richard Leventry, a district manager for Eli Lilly, and Mary V. Green,

1

a sales representative for Eli Lilly, are both alleged to be citizens of Alabama.  Tracy is a citizen of Alabama.  The Complaint asserts claims for violation of the Alabama Extended Manufacturer's Liability Doctrine (AEMLD), failure to warn, breach of warranty of merchantability, negligence and fraud against all defendants as well as a claim for negligent training and supervision against Eli Lilly.

Defendants removed this action to the United States District Court for the Northern District of Alabama on March 20, 2006.  The basis for removal is that complete diversity among the parties to this action exists due to Leventry and Green having been fraudulently joined.  Simultaneously with filing the Notice of Removal, Defendants also filed a Motion to Stay this action pending transfer of this case to a MDL proceeding that has been established in the Eastern District of New York.[1]  Tracy filed an Emergency Motion to Remand on March 30, 2006.

## Facts[2]

Tracy was prescribed the drug Zyprexa by Dr. Wolfman Glaser on or about

---

[1] Defendants invite the court to stay this case without reaching a decision on the motion to remand so that the instant motion may be decided by the MDL once the case is transferred.  Such a course of action would be improper in that the parties are entitled to a determination of this court's jurisdiction as soon as is practicable.  Additionally, the facts which establish (or fail to establish) fraudulent joinder are likely to be unique to this case.

[2] As it must, the court will decide all disputed issues of fact in favor of the plaintiff; however, where an affidavit is undisputed by the plaintiff, the court will give weight to the sworn statement over unsupported allegations in the Complaint.  *See Legg v. Wyeth*, 428 F.3d 1317, 1323 (11th Cir. 2005).

April, 2003, and continued taking the drug under physician supervised care until about August, 2005. In January, 2005, Tracy was diagnosed with borderline diabetes. Following further tests, she was diagnosed as a Type II diabetic in April, 2005. Tracy alleges that her diabetes is the proximate and legal result of the ingestion of Zyprexa, and that her life expectancy has been shortened as a consequence of her diabetic condition.

Zyprexa, a product of Eli Lilly, was initially approved for the treatment of schizophrenia in October, 1996, and was subsequently approved for the short-term management of acute manic episodes associated with bipolar disorder in March, 2000.

In 1998, the worldwide pharmacology and epidemiology department at Eli Lilly began receiving adverse event reports revealing excessive weight gain as well as reports for diabetes mellitus, ketoacidosis, and increased incidents of hyperglycemia in patients who were taking Zyprexa. These reports are consistent with reports provided to Eli Lilly prior to the launch of the drug which warned against a risk of significant weight gain and Type II diabetes. During clinical trials, Eli Lilly denied that any patient using Zyprexa developed diabetes due to weight gain associated with ingesting the drug. Eli Lilly continued to market and sell the drug despite additional reports that its use was associated with instances of weight gain

and diabetes.

In April, 2002, the Japanese Ministry of Health required Eli Lilly to revise the Zyprexa label to include warnings that the drug has been linked to cases of weight gain and diabetes. Eli Lilly did not update the label for Zyprexa distributed to the American market until July, 2003, when the FDA placed Eli Lilly on notice that the label on Zyprexa must be updated with information on the metabolic disorders, including diabetes, that were linked to the drug. By this time, Eli Lilly was aware of the risk of diabetes associated with Zyprexa; however, Eli Lilly did not update the drug's label to include a warning of the risk until March, 2004.

The sales force for Eli Lilly were trained to avoid or, in the alternative, to give protracted answers to questions from physicians regarding the risk of diabetes associated with Zyprexa. In addition, Eli Lilly employed the services of at least one physician to assist sales personnel at trade shows in an effort to minimize inquiring physicians' concerns about the risk of diabetes associated with the drug.

Eli Lilly's sales representatives were not instructed to conduct any independent medical research, including review of scientific articles not provided to them by Eli Lilly, as to any of the risks or benefits associated with Zyprexa, and were limited to discussing issues approved during their sales training. In many cases, the sales representatives were instructed by Eli Lilly to refer physicians, as the ultimate

4

decision maker to prescribe the drug, to the written information provided by Eli Lilly regarding Zyprexa.

Leventry, through an affidavit dated March 14, 2006, admits that he is a district manager for Eli Lilly; however, he denies being responsible for training the sales staff who promoted Zyprexa, supervising the sales force or any other person responsible for promoting Zyprexa, supervising anyone who called on Tracy's prescribing physician, and having any involvement in the manufacture or development of Zyprexa, the preparation of package inserts, or otherwise participating in the promotion of Zyprexa.

Green, through two affidavits dated March 14, 2006, and April 6, 2006, admits being a sales representative for Eli Lilly responsible for promoting Zyprexa to psychiatrists, including Tracy's prescribing physician, beginning prior to and extending throughout the duration of Tracy's prescribed use of Zyprexa. Her knowledge of the drug was derived exclusively from materials and education provided by Eli Lilly. At no point did she conduct any independent research on Zyprexa.

Green states that she did not represent Zyprexa to have efficacy for any uses other than those approved by the FDA. However, Green was trained to promote the drug with the tale of a fictitious individual known as "Donna" who was a single

5

mother suffering from anxiety and irritability issues. Donna was created to enhance profits for Eli Lilly for promoting Zyprexa for off-label uses. Anxiety, in any form, is not an approved ailment for which Zyprexa is a treatment.

Green represents that she had not seen any of the documents accompanying Tracy's Motion to Remand, that those documents were not a part of her training, nor did she use those documents when she called on Tracy's physician.

Green denies any knowledge of any risks associated with Zyprexa other than those provided in the FDA approved package insert accompanying the drug, and she denies that Eli Lilly trained her to mislead or withhold information from physicians or that she mislead or withheld information from physicians regarding the risks associated with Zyprexa.

Tracy has produced documents generated by Eli Lilly and used for the purpose of training its sales force. These documents acknowledge a risk of weight gain and diabetes associated with Zyprexa and instruct sales representatives on methods designed to minimize any physicians' concerns regarding the link between the drug and these risks. Green, as a sales representative for Eli Lilly responsible for promoting Zyprexa, would have access to these materials.[3]

---

[3] A genuine issue of disputed of fact exists regarding Green's knowledge and training as to the risks of weight gain and diabetes associated with ingesting Zyprexa. Green flatly denies having ever seen any of the documents offered by Tracy, and she additionally denies that Eli Lilly

Green represented, to Tracy's prescribing physician, that Zyprexa was safe and effective. That representation led, in part, to Dr. Glaser's prescribing Zyprexa to Tracy.

## Standard of Review

"Fraudulent joinder is a judicially created doctrine that provides an exception to the requirement of complete diversity." *Triggs v. John Crump Toyota, Inc.*, 154 F.3d 1284, 1287 (11th Cir. 1998). Under Eleventh Circuit precedent, joinder is fraudulent in three situations: (1) when there is no possibility that the plaintiff can prove a cause of action against the resident defendant; (2) when there is outright fraud in the plaintiff's pleading of jurisdictional issue; and (3) when a diverse defendant is joined with a nondiverse defendant as to whom there is no joint, several or alternative liability and where the claim against the diverse defendant has no real connection to the claim against the nondiverse defendant.[4] *Id*. *See also Coker v. Amoco Oil Co.*,

---

trained her to mislead or withhold information from physicians about risks associated with Zyprexa. Tracy has produced documents that were used by Lilly to train its sales force on how to address or avoid questions about Zyprexa and diabetes. The fact that these documents predate Green's employment is of no consequence. The court rejects Defendants' contention that *Legg* stands for the proposition that Green's affidavit trumps all allegations made and supporting documents provided by Tracy. Such a reading of *Legg* would allow nondiverse defendants to satisfy their burden on a motion to remand solely by executing affidavits that deny the allegations in a plaintiff's complaint. Tracy has effectively disputed Green's affidavit. For purposes of this motion, the court must decide these disputed issues of fact in favor of the plaintiff.

[4]In the present case, Defendants assert that only the first type of fraudulent joinder is applicable; accordingly, the court will offer no analysis as to the second and third situations under which a fraudulent joinder can occur.

709 F.2d 1433, 1440 (11th Cir. 1983), *superceded by statute on other grounds as stated in Georgetown Manor, Inc. v. Ethan Allen, Inc.*, 991 F.2d 1533 (11th Cir. 1993); *Tapscott v. MS Dealer Service Corp.*; 77 F.3d 1353, 1360 (11th Cir. 1996), *overruled as conflicting with prior panel decision on other grounds by Cohen v. Office Depot, Inc.*, 204 F.3d 1069 (11th Cir. 2000). If any of these situations are present, the nondiverse defendant has been fraudulently joined and its citizenship should be ignored for purposes of determining jurisdiction. *Id.*

"In evaluating a motion to remand, the removing party bears the burden of demonstrating federal jurisdiction." *Pacheco de Perez v. AT&T Co.*, 139 F.3d 1368, 1373 (11th Cir. 1998). "The determination of whether a resident defendant has been fraudulently joined must be based upon the plaintiff's pleadings at the time of removal, supplemented by the parties." *Id.* at 1380. "While the proceeding appropriate for resolving a claim of fraudulent joinder is similar to that used for ruling on a motion for summary judgment under Fed. R. Civ. P. 56(b) ... the jurisdictional inquiry must not subsume substantive determination." *Crowe v. Coleman*, 113 F.3d 1536, 1538 (11th Cir. 1997) (internal citations and marks omitted). A district court must resolve all questions of fact in favor of the plaintiff; however there must be some dispute of fact before the court can resolve that fact in the plaintiff's favor. *Legg v. Wyeth*, 428 F.3d 1317, 1323 (11th Cir. 2005). When a defendant's affidavits

are not disputed by the plaintiff, the court "cannot then resolve the facts in the [plaintiff's] favor based solely on the unsupported allegations in the Plaintiff's complaint." *Id.*

A federal court must be certain of its jurisdiction before "embarking upon a safari in search of a judgment on the merits." *Crowe*, 113 F.3d at 1538. A "district court's authority to look into the ultimate merits of the plaintiff's claims must be limited to checking for obviously fraudulent or frivolous claims." *Crowe*, 113 F.3d at 1542.

## Discussion

**I. Tracy has not asserted facts that could be construed to give rise to a possible cause of action against Leventry**

Tracy does not dispute that Leventry was not responsible for training the sales staff who promoted Zyprexa, supervising the sales force or any other person responsible for promoting Zyprexa, supervising anyone who called on Tracy's prescribing physician, and does not dispute that Leventry had no involvement in the manufacture or development of Zyprexa, the preparation of package inserts, or otherwise participated in the promotion of Zyprexa. In an attempt to defuse the disputed facts as they apply to Leventry, Tracy asserts that the veracity of the declarations contained in Leventry's affidavit is a matter to be navigated during

discovery, and that the court need not concern itself with Leventry's representations. Contrary to Tracy's position, the court is obligated to make factual determinations where there is obvious dispute.

Under the precedent articulated in *Legg*, the court must resolve all factual disputes in favor of Tracy; however, because Leventry's declaration conflicts with Tracy's assertions contained within her complaint, and because Tracy does not dispute or adequately rebut the statements contained in Leventry's affidavit, the court is obligated to accept Leventry's affidavit as fact for the purpose of deciding the instant motion. *See Legg*, 428 F.3d at 1323. Accordingly, Tracy cannot maintain a cognizable claim against Leventry, the court concludes that Leventry has been fraudulently joined in this action, and his citizenship will be ignored for the purpose of establishing diversity jurisdiction in this case. *See Triggs*, 154 F.3d at 1287.

## II.     Tracy can maintain a possible cause of action against Green

Tracy's arguments as to the improper removal of this case are based solely on the claims asserted against Green. The issue before the court is whether a possible claim for violation of the AEMLD, fraud, or negligence might be maintained against Green in state court. A possibility of success as to any of the aforementioned claims will lead to a determination that Green is not fraudulently joined in this action, that complete diversity does not exist among the parties, and that this action is due to be

remanded.

It is undisputed that Green transmitted information to Tracy's prescribing physician regarding Zyprexa. Tracy directs the court to numerous internal Eli Lilly documents that demonstrate Eli Lilly's knowledge that Zyprexa was linked to reports of weight gain and diabetes. Knowledge of those risks, to some degree, was imparted to sales representatives through documents that outline plans, created and executed by Eli Lilly, to craft sales materials and jargon designed specifically for the purpose of minimizing, by virtue of Green's solicitations, physicians' concerns, including those of Tracy's prescribing physician, about the link between Zyprexa and weight gain or diabetes.

### A.    Tracy can possibly maintain a claim for violation of the AEMLD against Green[5]

The AEMLD establishes a cause of action against "a manufacturer, or supplier, or seller, who markets a product not reasonably safe when applied to its intended use in the usual and customary manner, constitutes negligence as a matter of law." *Castrell v. Altec Industries, Inc.*, 335 So.2d 128, 132 (Ala. 1976). In order to establish liability under the AEMLD, Tracy must prove:

---

[5]Because Tracy could possibly maintain a claim against Green for violation of the AEMLD, the court will not offer analysis as to the possibility of the remaining claims of fraud and negligence asserted against Green.

> [She] suffered injury or damages to [herself] or [her] property by one who sold a product in a defective condition unreasonably dangerous to the plaintiff as the ultimate user or consumer, if (a) the seller was engaged in the business of selling such a product, and (b) it was expected to, and did, reach the user or consumer without substantial change in the condition in which it was sold.

*Key v. Maytag Corp.*, 671 So.2d 96, 101 (Ala. Civ. App. 1995); *quoting Atkins v. American Motors Corp.,* 335 So.2d 134 (Ala.1976).

Tracy asserts that, as a seller of Zyprexa, Green faces possible liability under the AEMLD. Defendants argue that Green is not a "seller" as defined under the AEMLD; thus, she cannot be held liable for a violation of the statue.

The sole issue addressed in the parties briefs is whether Green is a "seller" under the AEMLD or a representative of the seller.[6] The Alabama Supreme Court has not yet addressed the question of whether a sales representative is a "seller" exposed to possible liability under the AEMLD or, conversely, a representative for the "seller" who would be shielded from liability.

Tracy contends that because Alabama courts have never addressed the issue at hand and due to the lack of a clear mandate by Alabama courts on the issue, an

---

[6]Due to Defendants' burden to demonstrate the propriety of removal, and given that the additional elements necessary to establish liability under the AEMLD are not addressed in any of Defendants' papers, the court finds that Defendants concede the possibility that an Alabama state court could find that Zyprexa is "a product not reasonably safe when applied to its intended use in the usual and customary manner."

12

Alabama court might determine Green to be a "seller" under the AEMLD. The bright-line rule to which Tracy clings is that a "seller who markets a product not reasonably safe when applied to its intended use in the usual and customary manner" is exposed to liability under the AEMLD "[a]s long as there is a causal relationship between the defendant's conduct and the defective product." *Casrell v. Altec Industries, Inc.*, 335 So.2d 128, 132 (Ala. 1976).[7] The parties have not cited, and this court is unaware, of the existence of any published opinion from an Alabama court addressing liability under the AEMLD of a product sales representative who is employed by the manufacturer of the product. However, there are persuasive cases that distinguish between a sales representative and a "seller." The court agrees with Defendants that these cases indicate that a sales representative is not a "seller" as defined under the AEMLD in certain instances; however, none of those situations exist in the case at hand. While numerous persuasive decisions exist supporting both sides of this argument, the court is persuaded that a pharmaceutical representative, under the specific facts and allegations in this case, is a "seller" for purposes of the AEMLD.

Defendants direct the court to the case of *In re Rezulin Products Liability*

---

[7]*Casrell*, along with *Atkins v. American Motors Corp.*, 335 So.2d 134 (Ala. 1976), are cited by the parties as the cases defining the scope of the AEMLD. Neither case addresses a distinction between a "seller" or a "representative of the seller."

*Litigation*, 133 F.Supp.2d 272, 288 (S.D.N.Y. 2001), in which the court considered Alabama law and opined that holding a pharmaceutical sales representative liable under the AEMLD would contravene the doctrine's purpose and scope. The court observed, "[t]he AEMLD is founded on broader moral notions of consumer protection and on economic and social grounds, placing the burden to compensate for loss incurred by defective products on the one best able to prevent the distribution of these products." *Id.* at 287 (quoting *Atkins v. American Motor Corp.*, 335 So.2d 134, 139 (Ala. 1976)) (internal marks omitted). The court found that there was "no reasonable basis for supposing that [an Alabama court] would impose liability on the sales representative" due to the representative's status as merely an agent of the manufacturer/seller and, as a corporate employee, the sales representative was not "the best one able to prevent sales of defective drugs." *Id.* at 288 (internal marks omitted).

The facts of *In re Rezulin* are distinguishable from the present case in that the AEMLD was inapplicable to the *Rezulin* defendant pharmaceutical sales representative, in part, due to an "absence of any alleged connection between the sales representative and Plaintiff ... [which is] fatal to all of the claims against the sales representative." *In re Rezulin*, 133 F.Supp.2d at 287. Green admits that she called upon Tracy's prescribing physician for the purpose of promoting Zyprexa before and

14

continuing throughout the time Tracy was undergoing treatment with the drug. There is a clear link between the sales representative and the plaintiff in this case that simply was not present in *In re Rezulin,* thereby providing an important distinction between the two cases.

Applying the holding in *In re Rezulin*, a district court in *Bloodsworth v. Smith & Nephew*, 2005 WL 3470337, *6 (M.D. Ala. 2005) held that a sales representative who sold a replacement hip that later proved defective "is not deemed a 'seller' within the meaning of the AEMLD."[8] While the *Bloodsworth* court relied heavily on *In re Rezulin*, the court noted an unpublished opinion by the Multi-District Litigation Court in *In re Baycol Products Liability Litigation*, M.D.L. No. 1431, *4-*7 (D.Minn. March 26, 2004), holding that "the purpose of the AEMLD did not support a claim against a sales agent who had no authority to compel or prevent the distribution of particular products." *Id.* (internal marks omitted).

In the instant case, Green compelled the distribution of Zyprexa to Tracy by virtue of promoting the drug to Tracy's prescribing physician while ensuring the safety of the drug. There is no indication in *Bloodsworth* that the sales representative made any assertions as to the safety of the artificial hip that caused injury to the

---

[8]The court notes that district court decisions, including decisions of this district, are not binding on this court.

plaintiff in that case. On the other hand, Green represented that Zyprexa was a safe form of treatment, thereby opening herself up to potential liability given that Zyprexa, at the time Green made the representation, had been linked to the risks of weight gain and diabetes. This distinguishing factor separates the case at bar from the holding in *Bloodsworth*.

The jewel of Defendants' contention that Green has been fraudulently joined in this action is *Legg v. Wyeth*, 428 F.3d 1317, 1320 (11th Cir. 2005). In *Legg*, the court, in dicta, quotes *Anderson v. Am. Home Prods. Corp.*, 220 F.Supp.2d 414, 425 (E.D. Pa. 2002), for the general proposition that joinder of individual sales representatives in a lawsuit against a diet drug manufacturer can "only be characterized as a sham, at the unfair expense not only of [Defendants] but of many individuals and small enterprises that are being unfairly dragged into court simply to prevent the adjudication of lawsuits against [Defendants], the real target, in a federal forum." However, as Tracy points out, *Legg* did not hold that all sales representatives in pharmaceutical cases are fraudulently joined. The individual sales representatives who were determined to be fraudulently joined in *Legg* were so found due to Legg's insufficient response or rebuttal to affidavits, executed by the defendants in that case, that were contrary to Legg's allegations in the complaint. The *Legg* defendants' uncontroverted testimony establishing a lack of knowledge in that case is

distinguishable from the instant case where Green's affidavit, purporting to establish her lack of knowledge as to the risks associated with Zyprexa, has been adequately challenged by the Plaintiff.  In addition, the court in *Legg* was not called upon to interpret the definition of "seller" under the AEMLD.  This court does not read the holding in *Legg* to mean that all nondiverse sales representatives are per se fraudulently joined in actions involving pharmaceutical companies.

There are persuasive cases in which a district court has found potential liability under the AEMLD for an individual corporate employee, including sales representatives employed by a manufacturer.  Two such cases, involving the possible validity of AEMLD claims against individual, nondiverse defendants in products liability actions held that:

> In Alabama, the general rule is that officers or employees of a corporation are liable for torts in which they have personally participated, irrespective of whether they were acting in a corporate capacity. *Ex parte Charles Bell Pontiac-Buick-Cadillac-GMC, Inc.,* 496 So.2d 774, 775 (Ala.1986) (citing *Candy H. v. Redemption Ranch, Inc.,* 563 F.Supp. 505, 513 (M.D.Ala.1983)); *see also Chandler v. Hunter,* 340 So.2d 818, 822 (Ala.Civ.App.1976). Obviously, to the extent R.J. Reynolds allegedly violated the AEMLD, it acted through its employees; the company does not employ ghosts. [Plaintiff] should be allowed to pursue these individual defendants, and, if, after discovery, it should turn out that he has named the wrong persons, he should be allowed to make substitutions.

*Seaborn v. R.J. Reynolds Tobacco Co.,* 1996 WL 943621, *8 (M.D. Ala. 1996).

> The same language can be applied here: Defendants Philip Morris and Brown & Williamson clearly do not employ ghosts. That is, the court finds that some of the moving Defendants' employees are likely to hold some superior knowledge regarding the nature of cigarettes. The court finds that it is therefore conceivable that Plaintiff's AEMLD claims ... may be viable [against the individual nondiverse defendants].

*Clay v. Brown & Williamson Tobacco Corp.*, 77 F.Supp.2d 1220, 1224 (M.D. Ala. 1999).

A similar situation to those present in *Seaborn* and *Clay* exists in the instant case. Green admits to being an Eli Lilly employee engaged to promote Zyprexa to physicians, including Tracy's prescribing physician. Therefore, she is liable for torts in which she personally participated. Also, if Eli Lilly violated the AEMLD, it acted through Green in this case, and Tracy should be allowed to pursue Green as an individual defendant, considering Green's possible superior knowledge of the risks associated with Zyprexa and her representation to Tracy's prescribing physician that the drug was safe.

Eli Lilly's position, that its sales representatives are never "sellers" within the definition of the AEMLD, is untenable when examined from the perspective that such a holding would shield all nondiverse pharmaceutical sales representatives from any liability under the doctrine. Such a holding would be contrary to the purpose and scope of the AEMLD by allowing Green, an individual who potentially had

knowledge of the risks of weight gain and diabetes associated with Zyprexa, who promoted the drug as being safe to Tracy's prescribing physician, and who was in a position to prevent the defective product from reaching Tracy, to escape all liability under the doctrine.

Accordingly, the court holds that Green is a "seller" under the AEMLD and is therefore subject to liability. On a motion to remand, a court must determine whether there is no possibility that the plaintiff can prove a cause of action against the resident defendant. Due to Green's status as a "seller," and due to Defendants' apparent concession of the additional elements of an AEMLD claim against Green, a state court could possibly find a valid AEMLD claim against Green.

## Conclusion

The court finds that joinder of the nondiverse party, Mary V. Green, is not fraudulent. Complete diversity among the parties as required by 28 U.S.C.A. § 1332 does not exist. Consequently, this court lacks subject matter jurisdiction over this action, and this case is due to be remanded to the Circuit Court of Jefferson County, Alabama. Accordingly, Tracy's Emergency Motion to Remand is due to be **GRANTED**.

A Final Order will be entered consistent with this Memorandum Opinion.

**DONE** this 25th day of April, 2006.

                                               **VIRGINIA EMERSON HOPKINS**
                                               United States District Judge